**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION**

| | | |
|---|---|---|
| Laura W. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 25-cv-50432 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Frank Bisignano, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Laura W., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

## BACKGROUND

### A. Procedural History

On August 24, 2022, Laura W. ("Plaintiff") protectively filed a Title II application for disability and disability insurance benefits. R. 33. In both applications, Plaintiff alleged disability with an amended onset date of June 29, 2021. *Id.* The Social Security Administration denied her applications initially on April 27, 2023, and upon reconsideration on September 27, 2023. *Id.* Plaintiff subsequently filed a written request for a hearing and on June 4, 2024, a telephonic hearing was held by Administrative Law Judge ("ALJ") Lee Lewin where Plaintiff appeared, testified, and was represented by counsel. *Id.* Lee Knutson, an impartial vocational expert ("VE"), also appeared and testified. *Id.*

### B. The ALJ's Decision

In her ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 29, 2021, the alleged onset date. R. 35. At step two, the ALJ found that Plaintiff had the following severe impairments: sacroiliitis, fibromyalgia, rheumatoid arthritis, degenerative joint disease of the right hand and knees bilaterally, asthma, degenerative disc disease of the cervical and thoracic spine, obesity, bipolar disorder, depression, and social anxiety disorder. R. 36. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1. *Id.*

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work, except can never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, crawl, and balance; can frequently perform fine and gross manipulative tasks bilaterally; can understand, remember, and carry out simple instructions with sufficient persistence, concentration, or pace to timely and appropriately complete job duties; cannot perform at a production rate pace as on an assembly line; cannot work under hourly quota requirements, but can meet end day of day requirements; can have occasional contact with coworkers and supervisors away from the general public; and should avoid concentrated exposure to pulmonary irritants and to hazards including dangerous moving machinery and unprotected heights. R. 39.

At step four, the ALJ found that transferability of job skills was not an issue because Plaintiff did not have past relevant work experience. R. 45. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including document preparer, touch up screener, and film touch up inspector. R. 46. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time since June 29, 2021, the alleged onset date, through August 14, 2024, the date of the decision. R. 47-48.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). " Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with

[its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id.* Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff challenges the ALJ's decision on the grounds that the step five determination was not supported by substantial evidence and that she erred in evaluating Plaintiff's subjective symptoms. As detailed below, the Court finds that the ALJ's vocational findings were supported by substantial evidence and that her subjective symptom analysis was not patently wrong.

### Vocational Findings at Step Five

Plaintiff contends that the ALJ erred at step five by relying on the VE's testimony that there existed significant numbers of occupations in the national economy that Plaintiff could perform. The VE testified that considering an individual of Plaintiff's age, education, and RFC, there existed a significant number of sedentary and unskilled jobs in the national economy, including document preparer (17,000 jobs), touch up screener (4,000 jobs), and film touch up inspector (4,000 jobs). R. 46. Plaintiff asserts that the ALJ erred in citing the document preparer position in her decision by failing to comply with the heightened standard provided in Emergency Message 24027, which addresses potentially obsolete occupations. Plaintiff also challenges the number of jobs provided for the touch up screener and film touch up inspector positions. The Court finds that the ALJ's step five determination was supported by substantial evidence.

At step five of the sequential evaluation process, the burden shifts to the Commissioner to demonstrate that "there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022) (per curiam) (citation omitted); *see* 20 C.F.R. § 404.1560(c)(2). At this step, ALJs often rely on VEs to estimate the number of jobs that exist in significant numbers in the national economy for an individual with the claimant's experience and limitations. *Ruenger*, 23 F.4th at 761; 20 C.F.R. § 416.966(e). "Before accepting a VE's job-number estimate, the ALJ, when confronted by a claimant's challenge, must require the VE to offer a reasoned and principled explanation." *Chavez v. Berryhill*, 895 F.3d 962, 970 (7th. Cir. 2018). Ultimately, "the substantial evidence standard requires the ALJ to ensure that the approximation is the product of a reliable method." *Id.* at 968 (citations omitted).

In response to courts questioning the continued widespread existence of certain occupations contained in the Dictionary of Occupational Titles ("DOT"), the Social Security Administration issued Emergency Message 24027[1] ("EM-24027"), which took effect on June 22,

[1] Soc. Sec. Admin., EM-24027 - Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process (June 22, 2024), https://secure.ssa.gov/apps10/referencearchive.nsf/links/0621202402 2159PM.

2024.[2] The emergency message sets forth heightened evidentiary and articulation requirements for thirteen listed occupations deemed potentially obsolete and directs that an ALJ may not cite any of the listed occupations without obtaining additional evidence from the VE that, as currently performed: (1) the occupation's "requirements are consistent with the individual's RFC," and (2) the occupation "exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant." *Id.* Finally, the emergency message directs ALJs to include or summarize the VE's evidence that supports the conclusion. *Id.*

The parties do not dispute that the ALJ's findings as to the document preparer position were subject to EM-24027, as it is among the thirteen occupations listed in the emergency message, effective at the time of the hearing. However, Plaintiff contends that the ALJ failed to specify whether she was applying the heightened standard under the emergency message and that the VE did not provide sufficient "additional evidence" as required. The Commissioner responds that the ALJ's decision met the requirements of EM-24027 by eliciting and summarizing testimony from the VE regarding the document preparer occupation and that the VE's testimony was not subject to a heightened evidentiary standard.

"[L]ittle caselaw exists analyzing the quantum of 'additional evidence' an ALJ must offer to rely on a listed job at Step Five," however, district courts within and beyond this circuit have found that an ALJ may properly rely on a VE's testimony, consistent with EM-24027, so long as the VE provides the additional testimony discussed above. *See Boscaljon v. Comm'r of Soc. Sec.*, No. 3:25-CV-01541-JRK, 2026 WL 1842604, at *5 (N.D. Ohio June 26, 2026) (collecting cases); *see, e.g., Jared T. v. Bisignano*, No. 25-CV-1343, 2026 WL 2099142, at *7-8 (E.D. Wis. July 21, 2026); *Elizabeth M. v. Bisignano*, No. 25-cv-2550 (DJF), 2026 WL 686783, at *4-5 (D. Minn. Mar. 11, 2026); *Moria R. v. Comm'r of Soc. Sec.*, No. 2:24-cv-00227-Z-BT, 2025 WL 3190852, at *7 (N.D. Tex. Sep. 5, 2025). Courts have also found sufficient "additional evidence" where a VE relies on experience to testify on the occupation as currently performed. *See McGinty v. Bisignano*, No. 1:25-CV-1965, 2026 WL 1413553, at *8 (M.D. Pa. May 20, 2026) (citations omitted); *Rose v. Bisignano*, No. 7:24-cv-1141-KS, 2026 WL 540781, at *3 (E.D.N.C. Feb. 26, 2026); *Tester-Kopec v. Comm'r of Soc. Sec.*, No. 1:25-cv-00001, 2025 WL 3628110, at *9-10 (N.D. Ohio Dec. 15, 2025).

The Court finds that the ALJ satisfied the heightened standard set forth in EM-24027. First, during the hearing, the VE testified that "not all document preparers work with microfiche machines," and that while the job may now incorporate computer scanning bars, the occupation remained sedentary and unskilled. R. 88, 95. Next, the VE testified that his estimate of 17,000 positions took into account how the job was presently performed. R. 95. Finally, the ALJ summarized this testimony in her decision and determined that the VE provided a reasonable explanation for why his testimony describing the document preparer position differed from the

[2] EM-24027 was subsequently replaced with EM-24027 REV, effective January 6, 2025, to account for the Social Security Administration rescinding and replacing Social Security Ruling 00-4p with Social Security Ruling 24-3p. *See* Soc. Sec. Admin., EM-24027 REV - Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process (Jan. 6, 2025), https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM.

DOT's description. R. 46. Although the ALJ did not articulate the standard under EM-24027, she nevertheless applied it.[3]

Nonetheless, Plaintiff maintains that the ALJ erred in relying on the VE's testimony because it rested on the VE's "generic reference to his own experience," he had not recently observed the position or placed someone in it and admitted that there were no market surveys on the position. [18], p. 10; [22], p. 7. However, the ALJ's decision noted that the VE testified that his conclusions were "based on credible and authoritative sources, including the Bureau of Labor Statistics, the Chamber of Commerce, and JobBrowser." R. 47. Regarding the VE's experience, the ALJ noted that he cited his "over [forty] years observing jobs at all skill levels in the labor market," and that although he had "not personally placed individuals in this specific job, such direct placement is not a necessary prerequisite for accurately establishing what is customary for a particular position." *Id.* The ALJ thus did not err in crediting the VE's testimony based on his experience as a vocational rehabilitation counselor and reliance on databases. *Biestek*, 587 U.S. at 1152-53 (quoting SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) (rescinded)) ("[E]xperts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'"). Accordingly, the Court finds that substantial evidence supported the ALJ's finding that the document preparer position existed in significant numbers.

Finally, Plaintiff argues that the ALJ erred in overruling her objection to the VE's job number estimates for touch up screener and film touch up inspector because Plaintiff's query on JobBrowser yielded different results than the VE's. In overruling the objection, the ALJ did not address the job numbers provided through Plaintiff's methodology but instead found that the 17,000 jobs from the document preparer position constituted a significant number of jobs in the national economy. R. 47. However, Plaintiff contends that because the ALJ did not have substantial evidence to find that there were a significant number of document preparer positions in the national economy, the ALJ erred in relying on that occupation to overrule her objection to the touch up screener and film touch up inspector positions. In light of the Court's ruling above, the Court finds that the ALJ did not err in overruling this objection.

**Evaluation of Subjective Symptoms**

Plaintiff contends that the ALJ's subjective symptoms evaluation was patently wrong because the ALJ relied on grounds that were contradicted by the record.[4] The Court finds that the ALJ reasonably evaluated Plaintiff's subjective symptoms.

---

[3] To the extent that Plaintiff faults the ALJ for assessing the VE's testimony under SSR 00-4p instead of EM-24027, the Court notes that EM-24027 was issued in part to ensure that ALJs properly address conflicts between a VE's testimony and the DOT. *See* EM-24027. In other words, the EM-24027 was intended to ensure compliance with SSR 00-4p.

[4] Plaintiff additionally argues that the ALJ did not sufficiently consider her fibromyalgia in crafting an RFC but fails to demonstrate what greater limitations were warranted. Plaintiff's argument is underdeveloped and therefore waived. "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). Moreover, Plaintiff does not specify what greater limitations should have been found.

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, opinion evidence, daily activities, medication, and course of treatment. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) (citation omitted). An ALJ's assessment is patently wrong if the decision lacks explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). "Not all of the ALJ's reasons must be valid [in a subjective symptom analysis] as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009).

Here, the ALJ's assessment was adequately supported with evidence and explanation. In addressing Plaintiff's statements that injections and medications brought only limited relief, the ALJ discussed medical records that indicated the contrary. For example, the ALJ cited appointment notes demonstrating that Plaintiff experienced 60 percent relief from knee injections and 70 percent relief from bilateral sacroiliac joint injections. R. 43 (citing R. 704, 1925). The ALJ further noted that the record did not demonstrate that Plaintiff "ceased with injections due to ineffectiveness," stating that her Valgus, Varus, Lachman, and McMurray's tests were negative. *Id.* (citing R. 704, 707, 710). The ALJ also cited Plaintiff's subsequent ability to exercise as further support that injections improved her ability to function. *Id.* As to medications, the ALJ cited orthopedic clinic notes that demonstrated Tramadol, Humira, and methotrexate provided effective treatment for Plaintiff's chronic pain. R. 40-41 (citing generally R. 702-826; 2086-2105). Finally, the ALJ noted that there was no evidence in the record that Plaintiff was deemed a candidate for surgery. R. 43.

Plaintiff takes issue with the ALJ's findings because she claims they were contradicted by the record. Regarding the efficacy of treatment, Plaintiff points to other appointment notes that demonstrate that she experienced partial relief from injections for only two weeks at a time and still experienced diffuse pain with medications. [18], p. 12 (citing R. 729, 737, 748, 1914-15). As to her ability to walk, cycle, and interest in obtaining a gym membership, Plaintiff asserts that the ALJ ignored that these activities were for the purpose of qualifying for bilateral knee surgery. Finally, Plaintiff claims that the ALJ was mistaken in stating that she was not a candidate for surgery as the record demonstrated that she worked with medical providers to lose weight to undergo surgery. As an initial matter, the Court notes that the ALJ provided a holistic review of the record and was not required to discuss "every piece or category of evidence." *Warnell*, 97 F.4th at 1053 (citations omitted). Moreover, the ALJ appeared to consider Plaintiff's motivations for exercising as the appointment notes she cited indicated that Plaintiff was also modifying her diet to qualify for surgery. R. 42 (citing R. 2144). Because weight loss was a prerequisite for qualifying for surgery, which Plaintiff had not yet met, the Court cannot find that the ALJ mischaracterized the record by stating there was no evidence that she was deemed a candidate.

The Court notes that the ALJ's assessment of Plaintiff's subjective symptoms was comprehensive and included consideration of a combination of objective medical evidence, opinion evidence, daily activities, medication, and course of treatment in assessing Plaintiff's alleged symptoms related to joint pain. For example, the ALJ noted objective evidence, such as an MRI indicating degenerative changes in her left knee and joint effusion, as well as an appointment noting painful range of motion in her sacroiliac joint and knees. R. 41 (citing R. 743, 769).

However, the ALJ also noted that Plaintiff was observed with a normal gait during appointments. *Id.* (citing R. 717, 723, 733, 743). The ALJ also examined Plaintiff's daily living activities, noting that she could drive her son to school, manage personal care, and cook simple meals. R. 38, 42. Further, as stated above, the ALJ discussed Plaintiff's history with joint injections and that they provided some relief. R. 41 (citing R. 733, 1925). In analyzing the opinion evidence, the ALJ considered findings by state agency consultants, who opined at the initial and reconsideration levels that Plaintiff was limited to light exertional work, with standing and walking reduced to two hours. R. 44. However, the ALJ found the opinions as to these limitations unpersuasive because they were inconsistent with how Plaintiff's physical impairments in combination with her obesity. Thus, the ALJ found that sedentary work more accurately captured Plaintiff's limitations. *Id.* Finally, as stated above, the ALJ noted that medications, including Humira, effectively treated her chronic pain. R. 40-41.

Accordingly, the Court finds that the ALJ sufficiently followed the guidelines in SSR 16-3p when evaluating Plaintiff's subjective symptoms as a whole by adhering to the two-step process and considering various types of evidence as required. The ALJ appropriately examined Plaintiff's stated symptoms and their consistency with the record. The ALJ credited Plaintiff's symptoms to the extent they were supported by the record, which resulted in an RFC that limited Plaintiff to sedentary work and only occasional stooping, kneeling, crouching, crawling, and balancing. R. 39. Ultimately, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms did not warrant greater limitations as Plaintiff could still complete basic work-related activities. R. 45. To the extent Plaintiff maintains that the record supported different findings, the Court notes that it does not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citation omitted). Accordingly, the Court finds the ALJ's subjective evaluation fully explained and supported and not patently wrong.

**CONCLUSION**

For the foregoing reasons, the Court affirms the Commissioner's decision.

Date: August 24, 2026

ENTER:

Margaret J. Schneider

United States Magistrate Judge